UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LANDMARK TECHNOLOGY, LLC, <br><br> Plaintiff, <br><br> v. <br><br> BLADE-TECH INDUSTRIES, INC. <br><br> Defendants. | Civil Action No. <br><br> COMPLAINT FOR PATENT INFRINGEMENT <br><br><br> JURY DEMAND |

Plaintiff Landmark Technology, LLC ("Landmark"), for its Complaint against Blade-Tech Industries, Inc. ("Defendant" or "Blade-Tech"), alleges as follows:

**THE PARTIES**

1. Plaintiff Landmark Technology, LLC ("Landmark") is a limited liability company organized under the laws of the State of Delaware with its principal place of business at 329 Laurel, San Diego, CA 92101.

2. On information and belief, Blade-Tech Industries, Inc. ("Blade-Tech") is a Washington corporation with a principal place of business located at 5530 184th Street East, Puyallup, Washington 98375.  Landmark is further informed and believes, and on that basis

alleges, that Blade-Tech manufactures holsters, knives, and tactical gear.  Blade-Tech offers apparels and accessories, including belts, holsters, books, DVDs, T-shirts, and various accessories and derives a significant portion of its revenue from sales and distribution via electronic transactions conducted on and using at least, but not limited to, the Internet website located at http://blade-tech.com and/or https://blade-tech.com/account/login, and incorporated and/or related systems (collectively the "Blade-Tech Website").  Landmark is informed and believes, and on that basis alleges, that, at all times relevant hereto, Blade-Tech has done and continues to do business in this judicial district, including, but not limited to, providing products/services to customers located in this judicial district by way of the Blade-Tech Website.

## JURISDICTION AND VENUE

3. This is an action for patent infringement in violation of the Patent Act of the United States, 35 U.S.C. §§ 1 *et seq*.

4. This Court has original and exclusive subject matter jurisdiction over the patent infringement claims for relief under 28 U.S.C. §§ 1331 and 1338(a).

5. This Court has personal jurisdiction over Blade-Tech because Blade-Tech is a Washington corporation, and on information and belief, maintains its principal place of business in the state of Washington in this District.  On information and belief, Blade-Tech has transacted and is transacting business in this District that includes, but is not limited to, the use of products and systems that practice the subject matter claimed in the patents involved in this action.

6. Venue is proper in this district under 1400(b) because Blade-Tech (1) is incorporated in the State of Washington and (2) has a regular and established place of business in this District and has committed acts of infringement here.

## FACTS

7. On September 11, 2001, United States Patent No. 6,289,319 entitled "Automated Business and Financial Transaction Processing System" was duly and legally issued to Lawrence

B. Lockwood as inventor.  A true and correct copy of United States Patent No. 6,289,319 ("the '319 Patent") is attached hereto as Exhibit A and incorporated herein by this reference.

8. The '319 Patent is a continuation of U.S. Pat. App. No. 613,525 and several other patents and patent applications, and claims priority to January 24, 1986.

9. Specifically, the '319 Patent claims a novel automatic data processing system, including an interactive multimedia terminal capable of providing a video-based user interface while both dynamically sending and fetching remote information in order to fetch new inquiring sequences for the user.

10. By January 24, 1986—the date to which the '319 Patent claims priority—conventional "self-service terminals," such as that disclosed in U.S. Pat. No. 4,359,631 ("the '631 Patent"), had "evolved to a high degree of sophistication." Ex. A, 1:34-37.  A true and correct copy of the '631 Patent is attached as Exhibit B.  In spite of their sophistication, however, conventional terminals of the day were nonetheless incapable of "the more complex types of goods and services distribution which requires a great deal of interaction between individuals and institutions." Ex. A, 1:35-41.  In particular, they were incapable of supporting an interactive video presentation while at the same time sending and fetching information to and from remote locations.   Indeed, during prosecution of the '319 Patent, a three-judge panel of the Board of Patent Appeals and Interferences at the PTO found no suggestion of these higher-level functions being performed simultaneously in even the most sophisticated prior art terminal: "While [the prior art terminal of] Lockwood ['631] may fetch additional inquiring sequences (as in presenting additional questions or options to a user) in response to a user input, we find no suggestion in [the prior art terminal of] Lockwood ['631] of fetching the additional inquiring sequences in response to *both* user entry of data *and* to information received from the central processor," as claimed in the '319 Patent.  A true and correct copy of the Board's decision is attached as Ex. C.   Attempting to perform these functions at the same time on the prior art terminals of the early-to-mid 1980's, such as that disclosed in the '631 Patent, would have resulted in the congestion of their systems, rendering them virtually inoperable.  These technical limitations of the prior art terminals were

recognized by persons of ordinary skill in the art, as evidenced by the declaration of Joey A. Maitra, an engineer with extensive experience in the relevant subject matter who held multiple positions in industry during the 1980's. A true and correct copy of the Maitra Declaration is attached as Exhibit D.

11. The structure employed by the prior art terminal of the '631 Patent had, by 1986, become conventional. That structure, and its technical limitations, are representative of terminals of the period. As shown in Figure 8 of the '631 Patent, the terminal "employs a bi-directional



parallel bus oriented input/output structure." Ex. B, 4:57-59 & Fig. 8. This information handling connection—bus 40—was *shared* among the terminal's systems. Ex. B, 4:62-64 (noting this "structure . . . accommodate[s] the various terminal components."). This structure presented a significant technical problem: in order to carry provide a higher degree of interactivity appropriate to the "more complex" transactions the '319 Patent sought to carry out, the terminal's video playback and communication systems would have been required to operate at the same time. However, persons of ordinary skill in the art recognized that this would have exhausted the data transfer capacity of conventional terminals. Ex. D [Maitra Decl.] ¶¶ 12, 14, 20.

12. To solve these issues, the '319 Patent introduced a novel hardware improvement in the claimed terminal. As demonstrated in Figure 2 of the '319 Patent, a DMA unit was positioned



independently along its own information handling connection within the terminal, unlike the systems of the prior art. Ex. A, Fig. 2. Whereas prior art terminals would have incorporated a DMA unit into a single information handling connection shared among their systems (such as that illustrated in Fig. 8 of the '631 Patent), the '319 Patent disclosed two independent information handling connections designed to prevent congestion resulting from concurrent operation of terminal systems. Ex. D [Maitra Decl.] ¶ 20. As the specification of the '319 Patent explains, the terminal's modem "handles a batch of information through a direct memory access [DMA] unit 16, to and from a RAM memory"—i.e., placing information directly into memory along an independent information handling connection, and not, as in the prior art, by first traversing a shared connection already bogged down by other systems. Ex. A, 3:41-43; Ex. D [Maitra Decl.] ¶¶ 17-20. This unconventional hardware architecture enabled a higher level of interactivity and personalization of user transactions than was possible on conventional terminals in 1986, such as that disclosed in the '631 Patent. Persons of ordinary skill in the art would have recognized that the architecture of the terminal claimed in the '319 Patent overcame the technical limitations of conventional terminals, enabling the terminal to provide a richer interactive presentation to the

user while simultaneously utilizing its communication systems to fetch necessary data from remote sources. Ex. D [Maitra Decl.] ¶ 14.

13. In an amendment filed on September 19, 1995, during prosecution of the '319 Patent, the inventor stressed that his claims "define a new set of interrelated apparatuses" and thus that "the claims do not merely recite the use of 'conventional hardware,'" but were directed to a "claimed new machine," not a method of doing business. Attached as Exhibit E is a true and correct copy of the September 19, 1995 amendment.

14. Following a reexamination of Patent No. 6,289,319, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate, Number US 6,289,319 C1, on July 17, 2007, confirming the validity of all six (6) original claims and allowing twenty-two (22) additional claims. As part of the reexamination, the United States Patent and Trademark Office construed the claims, applied the prior art to the claims, and determined the claims were novel and non-obvious over the prior art. A true and correct copy of Ex Parte Reexamination Certificate, Number US 6,289,319 C1 is attached hereto as Exhibit F and incorporated herein by this reference.

15. Following a second reexamination of Patent No. 6,289,319, the United States Patent and Trademark Office issued an Ex Parte Reexamination Certificate, Number US 6,289,319 C2, on January 31, 2013, confirming the validity of all twenty eight (28) original claims. As part of the reexamination, the United States Patent and Trademark Office again construed the claims, applied the prior art to the claims, and determined the claims were novel and non-obvious over the prior art. A true and correct copy of Ex Parte Reexamination Certificate, Number US 6,289,319 C2 is attached hereto as Exhibit F and incorporated herein by this reference (United States Patent No. 6,289,319, together with the additional claims allowed by Ex Parte Reexamination Certificate, Number US 6,289,319 C1, and reaffirmed by Ex Parte Reexamination Certificate, Number US 6,289,319 C2 shall hereinafter be referred to as the "'319 Patent.")

16. On September 1, 2008, Lockwood licensed all rights in the '319 Patent to Landmark. Landmark is the exclusive licensee of the entire right, title and interest in and to the

Landmark Technology LLC v. Blade-Tech Industries, Inc.
Complaint for Patent Infringement

'319 Patent, including all rights to enforce the '319 Patent and to recover for infringement. The '319 Patent is valid and in force.

17. On or about August 4, 2017, Landmark sent Blade-Tech a letter informing Blade-Tech of the '319 Patent and that Blade-Tech's actions, as more fully described below, constituted infringement of the '319 Patent.

18. On or about September 8, 2017, Landmark sent Blade-Tech a follow-up letter regarding the '319 Patent.

19. As more fully laid out below, Blade-Tech has been and is now infringing the '319 Patent, in this judicial district and elsewhere, by providing its products/services using electronic transaction systems, which, individually or in combination, incorporate and/or use subject matter claimed by the '319 Patent.

## FIRST CLAIM FOR RELIEF

### (Direct Infringement of the '319 Patent, in Violation of 35 U.S.C. § 271(a))

20. Landmark refers to and incorporates herein by reference paragraphs 1-15.

21. Blade-Tech has directly infringed, and continues to directly infringe, at least Claim 1, 3, 7, 8, 9, 11, 19, 25, 27, and/or 28 of the '319 Patent in this judicial district and elsewhere in state of Washington and the United States, through the sales and distribution via electronic transactions conducted on and using at least, but not limited to, the Blade-Tech Website.

22. The claims of the '319 Patent relate to "an automated data processing system for processing business and financial transactions between entities from remote sites" comprising a variety of features.

23. The Blade-Tech functionality referenced above is "an automated data processing system for processing business and financial transactions between entities from remote sites" practicing the claims of the '319 Patent.

24. By way of example only, and without limitation, the Blade-Tech Website's functionality and supporting server infringes at least Claim 1, 3, 7, 8, 9, 11, 19, 25, 27, and/or 28 of the '319 Patent in that, the Blade-Tech Website's functionality and supporting server provide a

system that, when accessed by a terminal, practices all of the limitations of the claims and on which Blade-Tech processes business information and places purchase orders, including:

    a.    The Blade-Tech Website's functionality and supporting server, when accessed by a terminal, comprise an automatic data processing system for processing business and financial transactions between entities from remote sites running Blade-Tech Website's functionality.

    b.    The Blade-Tech Website system includes a central processor (the server and its supporting systems) programmed and connected to process a variety of inquiries and orders transmitted from Blade-Tech's functionality running at said remote sites. Blade-Tech's system allows for a broad range of transactions, thus a range of orders are possible. The system processes a "variety of inquiries and orders," such as inquiries regarding customization of its products, order history and order status, and the placement of orders for products.

    c.    The system is operated through a terminal (e.g., the Blade-Tech computer(s) at each of said remote sites), which terminal includes a data processor and operates in response to operational sequencing lists of program instructions (the code constituting the transaction systems). That terminal includes a DMA positioned independently on its own information handling connection, or its equivalent.

    d.    The system fetches additional inquiring sequences in response to a plurality of data entered through a keyboard and in response to information received from the central processor. For example, the Customer and Team Login sections of the Blade-Tech Website fetches additional inquiring sequences relating to erroneous or empty data fields, depending on the user's entry and information received from the central processor.

    e.    The server of the System and Blade-Tech's computerized station(s), together with software, practice all of the remaining limitations of Claim 1, 3, 7, 8, 9, 11, 19, 25, 27, and/or 28 of the '319 Patent. Blade-Tech's Website, functionality and server, and incorporated and/or related systems, put the invention into service.

25.    Blade-Tech's Website exerts control over the transactions placed via the claimed terminal. When the terminal's browser accesses Blade-Tech's Website, Blade-Tech's server

causes the browser to place a "cookie" on the claimed terminal, which allows users to store items in the website's shopping cart.

26. Attached as Exhibit G is a chart outlining examples of how Blade-Tech infringes the accused claims of the '319 Patent.

27. Blade-Tech, on information and belief, is also engaged in internal use of the claimed system, by developing and testing versions of its Website on its own computers. For example, Blade-Tech has an employee responsible for its "website, workstation, & database maintenance." *See* https://www.linkedin.com/in/cory-chapin-66877920.  Blade-Tech, therefore, by the acts complained of herein, is making, using, selling, or offering for sale in the United States, including in this District, products and/or services embodying the invention, and has in the past and is now continuing to infringe the '319 Patent, either literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a).

28. Blade-Tech threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Landmark's irreparable injury.  It would be difficult to ascertain the amount of compensation that would afford Landmark adequate relief for such future and continuing acts, and a multiplicity of judicial proceedings would be required.  Landmark does not have an adequate remedy at law to compensate it for the injuries threatened.

29. By reason of the acts of Blade-Tech alleged herein, Landmark has suffered damage in an amount to be proved at trial.

30. Landmark is informed and believes, and on that basis alleges, that the infringement by Blade-Tech is willful, wanton, and deliberate, without license and with full knowledge of the '319 Patent, thereby making this an exceptional case entitling Landmark to attorneys' fees and enhanced damages.

## SECOND CLAIM FOR RELIEF

**(Inducing Infringement of the '319 Patent, in Violation of 35 U.S.C. § 271(b))**

31. Landmark refers to and incorporates herein by reference paragraphs 1-25.

32. Landmark is informed and believes, and on that basis alleges, that Blade-Tech has actively and knowingly induced infringement of the '319 Patent, in violation of 35 U.S.C. § 271(b) by, among other things, inducing its customers to utilize their own device(s) in combination with http://blade-tech.com, and incorporated and/or related systems, to search for and order information and products from Blade-Tech in such a way as to infringe the '319 Patent.

33. For example, Blade-Tech is inducing its customers to infringe by encouraging them to create new accounts and to sign in to their accounts using their login information to retrieve their customer information.

34. By reason of the acts of Blade-Tech alleged herein, Landmark has suffered damage in an amount to be proved at trial.

35. Blade-Tech threatens to continue to engage in the acts complained of herein and, unless restrained and enjoined, will continue to do so, all to Landmark's irreparable injury. Landmark does not have an adequate remedy at law.

36. Landmark is informed and believes, and on that basis alleges, that the infringement by Blade-Tech is willful, wanton, and deliberate, without license and with full knowledge of the '319 Patent, thereby making this an exceptional case entitling Landmark to attorneys' fees and enhanced damages.

## PRAYER FOR RELIEF

WHEREFORE, Landmark prays for relief as follows:

A. Judgment that Blade-Tech has directly infringed, and induced others to infringe, the '319 Patent either literally and/or under the doctrine of equivalents;

B. Judgment that Blade-Tech's infringement of the '319 Patent has been willful;

C. Judgment permanently enjoining Blade-Tech, its officers, directors, agents, servants, affiliates, employees, subsidiaries, divisions, branches, parents, attorneys, representatives, and all others acting in concert or privity with any of them, from infringing the '319 Patent, and from inducing others to infringe the '319 Patent;


D.  Judgment awarding Landmark general and/or specific damages, including a reasonable royalty and/or lost profits, in amounts to be fixed by the Court in accordance with proof, including enhanced and/or exemplary damages, as appropriate, as well as all of Blade-Tech's profits or gains of any kind from its acts of patent infringement;

E.  Judgment awarding Landmark enhanced damages pursuant to 35 U.S.C. § 284 due to the willful and wanton nature of Blade-Tech's infringement;

F.  Judgment awarding Landmark all of its costs, including its attorneys' fees, incurred in prosecuting this action, including, without limitation, pursuant to 35 U.S.C. § 285 and other applicable law;

G.  Judgment awarding Landmark pre-judgment and post-judgment interest; and

H.  Judgment awarding Landmark such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Landmark hereby demands a trial by jury on all issues triable to a jury.

Dated: June 22, 2018

Respectfully submitted,

BANIE & ISHIMOTO LLP

By: /s/ John A. Lee, WSBA No. 35,550
    John A. Lee
    jlee@banishlaw.com
    Banie & Ishimoto LLP
    3705 Haven Ave., #137
    Menlo Park, CA 94025
    T: 650.241.2774
    F: 650.241.2770

    Attorneys for Plaintiff
    Landmark Technology, LLC